AO 93  (Rev. 12/09) Search and Seizure Warrant    (USAO CDCA Rev. 01/2013)

ORIGINAL

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>The account identified as alexistage21@gmail.com, that is<br>within the possession, custody, or control of Dropbox, Inc.,<br>333 Brannan Street, San Francisco, California 94107 | )<br>)<br>) Case No.   2:17-MJ-03179<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Central_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

    See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.  Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

**YOU ARE COMMANDED** to execute this warrant on or before _____14 days from the date of its issuance_____
                                                                                                *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been
                                                                    established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
                                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30).*

                                    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  *12/14/17  2:11 p.m.* _____
                                                                                    *Judge's signature*

City and state:    Los Angeles, California_____    CHARLES EICK, U.S. Magistrate Judge
                                                                                    *Printed name and title*

AUSA: Bruce Riordan

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>2:17-MJ-03179 | Date and time warrant executed:<br>12/14/17 @ 4:19PM | Copy of warrant and inventory left with:<br>Dropbox, Inc. |
| Inventory made in the presence of:<br>SA Forrest Silberstein | | |
| Inventory of the property taken and name of any person(s) seized:<br>[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes). If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.] | | |

— One USB drive provided by Dropbox, Inc., containing
Subscriber information and account Content for user
alexistage21@gmail.com
- 2 Documents provided by Dropbox, Inc.

**Certification** (by officer present during the execution of the warrant)

I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.

Date: 1/9/18

_____
Executing officer's signature

Sean Lundey, Special Agent
Printed name and title

AUSA: Bruce Riordan

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the account identified as alexistage21@gmail.com, that is within the possession, custody, or control of Dropbox, Inc., a company that headquartered at 333 Brannan Street, San Francisco, California 94107, regardless of where such information is stored, held, or maintained.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

**29.   SEARCH PROCEDURE**

1.    The warrant will be presented to personnel of DropBox, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.    To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.    The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4.    With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a. below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).  The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques, including to search for known images

ii

of child pornography.

   5.   If the search team encounters immediately apparent
contraband or other evidence of a crime outside the scope of the
items to be seized, the team shall immediately discontinue its
search pending further order of the Court and shall make and
retain notes detailing how the contraband or other evidence of a
crime was encountered, including how it was immediately apparent
contraband or evidence of a crime.

   6.   The search team will complete its search of the
content records as soon as is practicable but not to exceed 120
days from the date of receipt from the PROVIDER of the response
to this warrant.  The government will not search the content
records beyond this 120-day period without first obtaining an
extension of time order from the Court.

   7.   Once the search team has completed its review of the
content records and created copies of the items seized pursuant
to the warrant, the original production from the PROVIDER will
be sealed—and preserved by the search team for authenticity and
chain of custody purposes—until further order of the Court.
Thereafter, the search team will not access the data from the
sealed original production which fell outside the scope of the
items to be seized absent further order of the Court.

   8.   The special procedures relating to digital data found
in this warrant govern only the search of digital data pursuant
to the authority conferred by this warrant and do not apply to
any search of digital data pursuant to any other court order.

   9.   Pursuant to 18 U.S.C. § 2703(g) the presence of an

agent is not required for service or execution of this warrant.

**10.   INFORMATION TO BE DISCLOSED BY THE PROVIDER**

11.   To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred on or after February 19, 2017,[4] including:

i.   All emails, communications, or messages of any kind associated with the SUBJECT ACCOUNT, including stored or preserved copies of messages sent to and from the account, deleted messages, and messages maintained in trash or any other folders or tags or labels, as well as all header information associated with each e-mail or message, and any related documents or attachments.

ii.   All records or other information stored by subscriber(s) of the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures, videos, notes, texts, links, user profiles, account settings, access logs, and

---

[4] To the extent it is not reasonably feasible for the PROVIDER to restrict any categories of records based on this date restriction (for example, because a date filter is not available for such data), the PROVIDER shall disclose those records in its possession at the time the warrant is served upon it.

files.

   iii.  All folders and files associated with the SUBJECT ACCOUNT, including stored or preserved copies of files sent to and from the account, the source and destination addresses associated with file, the date and time at which each file was sent, and any user-created organizational structure within the SUBJECT ACCOUNT.

   iv.  All transactional information of all activity of the Dropbox accounts described above, including log files, messaging logs, records of session times and durations, dates and times of connecting, and methods of connecting: and emails "invites" sent or received via Dropbox, and any contact lists.

   v.  All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

   b.  All other records and information, including:

   i.  All subscriber information, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), any alternate names, other account names or e-mail addresses associated with the account, linked accounts, telephone numbers, physical addresses, and other identifying information regarding the subscriber, including any removed or changed names, email addresses, telephone numbers or physical addresses, the types of service utilized, account

status, account settings, login IP addresses associated with
session dates and times, as well as means and source of payment,
including detailed billing records, and including any changes
made to any subscriber information or services, including
specifically changes made to secondary email accounts, phone
numbers, passwords, identity or address information, or types of
services used, and including the dates on which such changes
occurred, for the following accounts:

       (I)   the SUBJECT ACCOUNT.

       (II) any other account associated with the
SUBJECT ACCOUNT, including by means of sharing a common
secondary, recovery, or alternate email address listed in
subscriber records for the SUBJECT ACCOUNT or by means of
sharing a common phone number or SMS number listed in subscriber
records for the SUBJECT ACCOUNT.

       (III)    any other account accessed by a
device with an identifier responsive to the device identifiers
called for in paragraph 10.b.iii.

       ii.  All user connection logs and transactional
information of all activity relating to the SUBJECT ACCOUNT
described above in Section II.10.a., including all log files,
dates, times, durations, data transfer volumes, methods of
connection, IP addresses, ports, routing information, dial-ups,
and locations.

       iii. Any information identifying the device or
devices used to access the SUBJECT ACCOUNT, including any
Android ID, Advertising ID, unique application number, hardware

model, operating system version, unique device identifier,
Global Unique Identifier ("GUID"), serial number, mobile network
information, phone number, device serial number, MAC address,
Electronic Serial Number ("ESN"), Mobile Electronic Identity
Number ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile
Identification Number ("MIN"), Subscriber Identity Module
("SIM"), Mobile Subscriber Integrated Services Digital Network
Number ("MSISDN"), International Mobile Subscriber Identifier
("IMSI"), International Mobile Equipment Identity ("IMEI"), or
Apple advertiser ID or ID for advertisers ("IDFA"), and any
other information regarding the types of devices used to access
the SUBJECT ACCOUNT or other device-specific information;

        iv.  Any information showing the location of the
user of the SUBJECT ACCOUNT, including while sending or
receiving a message using the SUBJECT ACCOUNT or accessing or
logged into the SUBJECT ACCOUNT.

    **12.**  **INFORMATION TO BE SEIZED BY THE GOVERNMENT**

    13.  For each SUBJECT ACCOUNT listed in Attachment A, the
search team may seize:

        a.  All information described above in Section
II.10.a. that constitutes evidence, contraband, fruits, or
instrumentalities of violations of 18 U.S.C.
§§ 2252A(a)(2)(receipt and distribution of child pornography and
2252A(a)(5)(B)(possession of child pornography), namely:

        i.  Information relating to who created,
accessed, or used the SUBJECT ACCOUNT, including records about
their identities and whereabouts.

ii.   Child pornography, as defined in 18 U.S.C. § 2256(8).

iii. Any files or records that refer to child pornography, as defined in 18 U.S.C. § 2256(8), including but not limited to documents that refer to the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, order, requesting, trade, or transaction of any kind, involving child pornography.

iv.   Any files or records tending to identify persons involved in the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, order, requesting, trade, or transaction of any kind, involving child pornography, as defined in 18 U.S.C. § 2256.

v.   Any files or records that identify any minor visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

vi.   Any and all files or records which are sexually arousing to individuals who are interested in minors. Such material is commonly known as "child erotica" and includes images of children, written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques of child exploitation, sexual disorders, pedophilia, nudist publications, diaries, and fantasy writings.

vii. Any files or records that pertain to

accounts with any Internet Service Provider.

     viii.  Any passwords, encryption keys, and other access devices that may be necessary to access folders and files in the SUBJECT ACCOUNT;

  b. All records and information described above in Section II.10.b.

**14.** **PROVIDER PROCEDURES**

 15. Notwithstanding 18 U.S.C. § 2252/2252A or any similar statute or code, the provider shall disclose responsive data by sending it to the following address via US Mail, or to the following email address:

    Special Agent Sean Lunney
    501 West Ocean Boulevard, Suite 7200
    Long Beach, California 90802
    VIA EXPRESS DELIVERY SERVICE

    Phone: (562) 624-4026 / Facsimile: (562) 980-3242
    E-mail: Sean.P.Lunney@ice.dhs.gov

 16. IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant. IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant, until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the PROVIDER complies with this warrant or

such later date as may be set by the Court upon application for
an extension by the United States.   Upon expiration of this
order, at least ten business days prior to disclosing the
existence of the warrant, the PROVIDER shall notify the agent
identified in paragraph 12 above of its intent to so notify.

x

## AFFIDAVIT

I, SEAN P. LUNNEY, being duly sworn, declare and state as
follows:

### I.  INTRODUCTION

1. I am a Special Agent ("SA") with the Department of
Homeland Security, Homeland Security Investigations ("HSI") and
have been so employed since June 2010.  I am currently assigned
to the Child Exploitation Investigations Group ("CEIG"), where
I investigate criminal violations relating to child
exploitation and child pornography, including violations
pertaining to the illegal production, distribution, receipt,
and possession of child pornography, in violation of 18 U.S.C.
§§ 2252 and 2252A.  During my tenure with HSI, I have conducted
and participated in numerous investigations of criminal
activity, including investigations of sexual exploitation of
children on the Internet and child pornography transmitted via
computer.  During the investigation of these cases, I have
participated in the execution of numerous search warrants and
seized evidence of such violations.  I have had the opportunity
to observe and review various examples of child pornography in
all forms of media, including computer media.  I have also
successfully completed the Immigration and Customs Enforcement
("ICE") Special Agent Training Program at the Federal Law
Enforcement Training Center.  In this program, I learned about
a number of investigative techniques and subjects, including
techniques used by those engaged in computer crimes and child
pornography crimes.

2.   I make this affidavit in support of an application

for a warrant for information associated with the account

identified as alexistage21@gmail.com (the "SUBJECT ACCOUNT"),

that is stored at premises owned, maintained, controlled, or

operated by Dropbox, Inc., (the "PROVIDER"), a provider of

electronic communication and remote computing services,

headquartered at 333 Brannan Street, San Francisco, California

94107.[1]  The information to be searched is described in

Attachment A.  This affidavit is made in support of an

application for a warrant under 18 U.S.C. §§ 2703(a),

2703(b)(1)(A), 2703(c)(1)(A) and 2703(d)[2] to require the

_____

[1] Because this Court has jurisdiction over the offense(s)
being investigated, it may issue the warrant to compel the
PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A),
(c)(1)(A).  See 18 U.S.C. §§ 2703(a) ("A governmental entity
may require the disclosure by a provider . . . pursuant to a
warrant issued using the procedures described in the Federal
Rules of Criminal Procedure . . . by a court of competent
jurisdiction") and 2711 ("the term 'court of competent
jurisdiction' includes -- (A) any district court of the United
States (including a magistrate judge of such a court) or any
United States court of appeals that -- (i) has jurisdiction
over the offense being investigated; (ii) is in or for a
district in which the provider of a wire or electronic
communication service is located or in which the wire or
electronic communications, records, or other information are
stored; or (iii) is acting on a request for foreign assistance
pursuant to section 3512 of this title").

[2] The government is seeking non-content records pursuant
to 18 U.S.C. § 2703(d).  To obtain the basic subscriber
information, which does not contain content, the government
needs only a subpoena.  See 18 U.S.C. § 2703(c)(1), (c)(2).  To
obtain additional records and other information--but not
content--pertaining to subscribers of an electronic
communications service or remote computing service, the
government must comply with the dictates of section
2703(c)(1)(B), which requires the government to supply specific
and articulable facts showing that there are reasonable grounds
to believe that the records or other information sought are
relevant and material to an ongoing criminal investigation in

2

PROVIDER to disclose to the government copies of the information (including the content of communications) described in Section II of Attachment B.  Upon receipt of the information described in Section II of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III of Attachment B.  Attachments A and B are incorporated herein by reference.

3.  As described more fully below, I respectfully submit there is probable cause to believe that the requested information associated with the SUBJECT ACCOUNT includes evidence, contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. § 2252A(a)(2)(receipt and distribution of child pornography) and § 2252A(a)(5)(A) (possession of child pornography).

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

---

order to obtain an order pursuant to 18 U.S.C. § 2703(d).  The requested warrant calls for both records containing content (see Attachment B paragraph II.10.a.) as well as subscriber records and other records and information that do not contain content (see Attachment B paragraph II.10.b.).

## II. <u>SUMMARY OF PROBABLE CAUSE</u>

5.    The PROVIDER allows Internet users to store digital
files online, in the Internet "cloud."  On June 7, 2017, the
PROVIDER reported that multiple images of child pornography were
uploaded to and stored in the SUBJECT ACCOUNT.   Internet
Protocol ("IP") addresses used to access the SUBJECT ACCOUNT
indicate that the user of the SUBJECT ACCOUNT resides in the
Central District of California.  As set forth below in more
detail, I believe there is probable cause to search the SUBJECT
ACCOUNT for evidence related to child pornography offenses.

## III. <u>STATEMENT OF PROBABLE CAUSE</u>

### A.    SERVICES PROVIDED BY THE PROVIDER (DROPBOX)

6. In my training and experience, I have learned that
Dropbox, the PROVIDER, is an online storage medium on the
internet accessed from a computer or electronic storage device.
As an example, online storage mediums such as Dropbox make it
possible for the user to have access to saved files without the
requirement of storing the files on their own computer or other
electronic storage device.  The PROVIDER is an "offsite"
storage medium for data that can be viewed at any time from any
device capable of accessing the internet.   Users can store
their files on Dropbox and avoid having the files appear on
their digital devices.  Anyone searching an individual's
digital device that utilizes the PROVIDER would not be able to
view these files if the user opted only to store them at an
offsite such as the PROVIDER.   These are often viewed as

4

advantageous for collectors of child pornography in that they can enjoy an added level of anonymity and security.

7. The PROVIDER provides a variety of on-line services, including online storage access, to the general public.  The PROVIDER allows subscribers to obtain accounts at the domain name www.dropbox.com.  Subscribers obtain a Dropbox account by registering with an email address.  During the registration process, the PROVIDER asks subscribers to provide basic personal identifying information.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

8. When the subscriber transfers a file to a Dropbox account, it is initiated at the user's computer, transferred via the Internet to the PROVIDER's servers, and then can automatically be synchronized and transmitted to other computers or electronic devices that have been registered with that Dropbox account.  This includes online storage in the PROVIDER'S servers.  If the subscriber does not delete the content, the files can remain on Dropbox servers indefinitely.  Even if the subscriber deletes their account, it may continue to be available on the Dropbox servers for a certain period of time.

9. Online storage providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the

5

date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account.  In addition, online storage providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

10. In some cases, the PROVIDER's account users will communicate directly with the PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

**B.   THE SUBJECT ACCOUNT**

11. The National Center for Missing and Exploited Children ("NCMEC") is a nonprofit organization in the United States working with law enforcement on issues relating to missing and exploited children.  NCMEC provides information it receives from the public and Electronic Service Providers ("ESPs") to law enforcement agencies.  ESPs are companies such

6

as Google, Yahoo!, and AOL, which provide free and paid
services online.  These services may include e-mail, instant
messaging, and online storage.  NCMEC sends information to law
enforcement by way of CyberTipline reports.

12. According to NCMEC's website, CyberTipline is
operated in partnership with the Federal Bureau of
Investigation, ICE, U.S. Postal Inspection Service, U.S. Secret
Service, military criminal investigative organizations, U.S.
Department of Justice, Internet Crimes Against Children Task
Force program, as well as other state and local law enforcement
agencies.  Reports to the CyberTipline are made by the public
and ESP.  ESPs are required by law to report apparent child
pornography to law enforcement via the CyberTipline.

13. On July 6, 2017, HSI Los Angeles received
CyberTipline Report 21442540 (the "CyberTipline Report") from
NCMEC, which was ultimately assigned to me for investigation.

14. On August 25, 2017, I reviewed all content provided
by NCMEC in the CyberTipline Report.  The report reflected that
on or about June 7, 2017, the PROVIDER had reported to NCMEC
that an individual utilizing the SUBJECT ACCOUNT uploaded a
combination of approximately 35 videos and images of alleged
child pornography to the Dropbox account associated with the
SUBJECT ACCOUNT.[3]

15. According to the PROVIDER, Internet Protocol ("IP")
addresses used to access the SUBJECT ACCOUNT indicate that the

_____

[3] The PROVIDER indicated that the PROVIDER's staff fully
reviewed the contents of these files before providing them to
NCMEC.

7

user of the SUBJECT ACCOUNT resides in the Central District of
California.  According to the CyberTipline Report, the PROVIDER
indicated that a person utilizing the SUBJECT ACCOUNT logged
into IP address 76.171.168.61 on February 19, 2017 and IP
address 76.89.220.208 on April 16, 2017 and May, 25,
2017.  NCMEC performed a publically available online query and
discovered that both IP addresses are owned by Time Warner
Cable and geographically located within Maywood, California, in
Los Angeles County.

16. On August 25, 2017, I reviewed a file titled
"uploadlog1" that the PROVIDER provided to NCMEC.  Among other
information, "uploadlog1" contained the names of approximately
1,342 files that were uploaded to the PROVIDER by the SUBJECT
ACCOUNT between the dates of approximately February 19, 2017 to
April 13, 2017.  Based upon my training and experience, and my
conversations with other law enforcement officers who have
experience with child pornography investigations, I determined
that some of these file names are indicative of names used for
titles of child pornography videos and/or images.  Examples of
these file names listed in "uploadlog1" are "/Boy/7yr boy fucks
man(2).avi", "/Boy(1)/13yr old with cum on his mouth.jpeg", and
"/B/13yo boy jerks massive uncut cock to cum w sound.avi."

17. On August 25, 2017, I reviewed at least three of the
35 video and image files that were provided by NCMEC.  Some of
these files are described in more detail below:

a.  The file titled "VID-20141117-WA0002.mp4" is
approximately 48 seconds in length, and depicts what appears to

8

be a one to three year old male, who is naked and bent over on
his knees.  An adult male appears to be rubbing an erect penis
and masturbating on the child's anus.  According to
"uploadlog1", this video file appears to have been uploaded on
or about February 19, 2017 to the PROVIDER by someone utilizing
the SUBJECT ACCOUNT.

        **b.**    The file titled "VID-20160618-WA0027.mp4" is
approximately 4 minutes and 26 seconds in length, and depicts
what appears to be a nine to eleven year old male who is
undressing and then is seen orally copulating an erect penis.
According to "uploadlog1", this video appears to have been
uploaded on or about February 20, 2017 to the PROVIDER by
someone utilizing the SUBJECT ACCOUNT.

        **c.**    The file titled "VID-20160618-WA0030.mp4" is
approximately 3 minutes and 42 seconds in length, and depicts
what appears to be a seven to ten year old male who is bending
over and being anally penetrated by an adult penis. According to
"uploadlog1", this video file appears to have been uploaded on
or about February 20, 2017 to the PROVIDER by someone utilizing
the SUBJECT ACCOUNT.

    18. On August 25, 2017, I sent the PROVIDER a
preservation letter requesting that information associated with
the SUBJECT ACCOUNT be preserved for 90 days pursuant to 18
U.S.C. § 2703(f).  I believe that the PROVIDER still has the
data contained in the SUBJECT ACCOUNT.

### IV. BACKGROUND ON E-MAIL AND SOCIAL MEDIA ACCOUNTS AND THE PROVIDER

    19. In my training and experience, I have learned that
providers of e-mail and/or social media services, such as
Dropbox, Inc., offer a variety of online services to the

public.  Providers allow subscribers to obtain accounts like
the SUBJECT ACCOUNT.  Subscribers obtain an account by
registering with the provider.  During the registration
process, providers generally ask their subscribers to provide
certain personal identifying information when registering for
an e-mail or social media account.  Such information can
include the subscriber's full name, physical address, telephone
numbers and other identifiers, alternative e-mail addresses,
and, for paying subscribers, means and source of payment
(including any credit or bank account number).  Some providers
also maintain a record of changes that are made to the
information provided in subscriber records, such as to any
other e-mail addresses or phone numbers supplied in subscriber
records.  In my training and experience, such information may
constitute evidence of the crimes under investigation because
the information can be used to identify the user(s) of an
account.

        20. Therefore, the computers of the PROVIDER in this
investigation are likely to contain stored electronic
communications and information concerning subscribers and their
use of the PROVIDER's services, such as account access
information, e-mail or message transaction information, and
account application information.  In my training and
experience, such information may constitute evidence of the
crimes under investigation because the information can be used
to identify the user(s) of the SUBJECT ACCOUNT.

21. A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails or other messages, such as address books, contact or buddy lists, calendar data, pictures or videos (other than ones attached to e-mails), notes, and other files, on ser`vers maintained and/or owned by the PROVIDER.  In my training and experience, evidence of who was using an account may be found in such information.

22. In my training and experience, e-mail and social media providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the PROVIDER'S website), and other log files that reflect usage of the account.  In addition, e-mail and social media providers often have records of the Internet Protocol ("IP") address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT ACCOUNT.

23. In my training and experience, e-mail and social media account users will sometimes communicate directly with the service provider about issues relating to the account, such

11

as technical problems, billing inquiries, or complaints from
other users.   Providers of e-mails and social media services
typically retain records about such communications, including
records of contacts between the user and the provider's support
services, as well records of any actions taken by the provider
or user as a result of the communications.   In my training and
experience, such information may constitute evidence of the
crimes under investigation because the information can be used
to identify the user(s) of the SUBJECT ACCOUNT.

24.   I know from my training and experience that the
complete contents of an account may be important to
establishing the actual user who has dominion and control of
that account at a given time.   Accounts may be registered in
false names or screen names from anywhere in the world with
little to no verification by the service provider.   They may
also be used by multiple people.   Given the ease with which
accounts may be created under aliases, and the rarity with
which law enforcement has eyewitness testimony about a
defendant's use of an account, investigators often have to rely
on circumstantial evidence to show that an individual was the
actual user of a particular account.   Only by piecing together
information contained in the contents of an account may an
investigator establish who the actual user of an account was.
Often those pieces will come from a time period before the
account was used in the criminal activity.   Limiting the scope
of the search would, in some instances, prevent the government
from identifying the true user of the account and, in other

instances, may not provide a defendant with sufficient
information to identify other users of the account.  Therefore,
the contents of a given account, including the e-mail addresses
or account identifiers and messages sent to that account, often
provides important evidence regarding the actual user's
dominion and control of that account.  For the purpose of
searching for content demonstrating the actual user(s) of the
SUBJECT ACCOUNT, I am requesting a warrant requiring the
PROVIDER to turn over all information associated with the
SUBJECT ACCOUNT with the date restriction included in
Attachment B for review by the search team.

25. Relatedly, the government must be allowed to
determine whether other individuals had access to the SUBJECT
ACCOUNT.  If the government were constrained to review only a
small subsection of an account, that small subsection might
give the misleading impression that only a single user had
access to the account.

26. I also know based on my training and experience that
criminals discussing their criminal activity may use slang,
short forms (abbreviated words or phrases such as "lol" to
express "laugh out loud"), or codewords (which require entire
strings or series of conversations to determine their true
meaning) when discussing their crimes.  They can also discuss
aspects of the crime without specifically mentioning the crime
involved.  In the electronic world, it is even possible to use
pictures, images and emoticons (images used to express a
concept or idea such as a happy face inserted into the content

13

of a message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and parenthesis :) to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

27. This application seeks a warrant to search all responsive records and information under the control of the PROVIDER, which is subject to the jurisdiction of this court, regardless of where the PROVIDER has chosen to store such information.

28. As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER, under seal, until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a.   I make that request because I believe it might be impossible for a provider to authenticate information taken from the SUBJECT ACCOUNT as its business record without the original production to examine.  Even if the provider kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the provider to keep a copy for the

14

entire pendency of the investigation and/or case.  If the
original production is destroyed, it may be impossible for the
provider to examine a particular document found by the search
team and confirm that it was a business record of the provider
taken from the SUBJECT ACCOUNT.

       b.   I also know from my training and experience that
many accounts are purged as part of the ordinary course of
business by providers.  For example, if an account is not
accessed within a specified time period, it -- and its contents
-- may be deleted.  As a consequence, there is a risk that the
only record of the contents of an account might be the
production that a provider makes to the government, for example,
if a defendant is incarcerated and does not (perhaps cannot)
access his or her account.  Preserving evidence, therefore,
would ensure that the government can satisfy its Brady
obligations and give the defendant access to evidence that might
be used in his or her defense.

### V.   CLOUD BASED STORAGE

    28.  In my training and experience, I have learned that
there are numerous cloud-based storage services available for
consumers offering many different capabilities.  In general,
cloud-based storage services can be defined as an online storage
medium on the Internet accessed from a computer or electronic
storage device.  Providers, such as Dropbox, Inc., make it
possible for the user to have access to saved files, data,
programs, etcetera (referred to as "contents") without the
requirement of storing said contents on their own computers or

other electronic storage devices; to include physical hard
drives, USB drives, CDS, DVDS, etc.  The PROVIDER provides an
"offsite" storage medium for contents that can be viewed at any
time from any device capable of accessing the Internet.

29. Users can store their contents on a cloud-based
storage and avoid having the contents accessed and in some
cases appear on their computer.  Anyone conducting a search of
an individual's computer would not be able to see the contents
if the user opted to store the contents in the "cloud."  These
are often viewed as advantageous for collectors of child
pornography in that they can enjoy an added level of anonymity
and security.

30. In my training and experience, the subscriber
information collected by the PROVIDER during the account
registration process - such as name, address, telephone
numbers, alternative e-mail addresses, and, for paying
subscribers, means and source of payment (including any credit
or bank account number) - may constitute evidence of crimes
under investigation because the information can identify the
user(s) of the SUBJECT ACCOUNT.

31. In my training and experience, providers typically
retain certain transactional information about the creation and
use of each account on their systems.  This information can
include the date on which the account was created, the length
of service, records of login (i.e., session) times and
durations, the types of service utilized, the status of the
account (including whether the account is inactive or closed),

16

the methods used to connect to the account (such as logging
into the account via the provider's website), and other log
files that reflect usage of the account.  In addition,
providers often have records of the Internet Protocol ("IP")
address used to register the account and the IP addresses
associated with particular logins to the account.  Because
electronic devices that connect to the Internet use an IP
address, IP address information can help to potentially
identify locations where computers and devices were used to
access the SUBJECT ACCOUNT.

32. In my training and experience, account users will
sometimes communicate directly with a service provider about
issues relating to the account, such as technical problems,
billing inquiries, or complaints from other users.  Providers
typically retain records about such communications, including
records of contacts between the user and the provider's support
services, as well records of any actions taken by the provider
or user as a result of the communications.  In my training and
experience, such information may constitute evidence of the
crimes under investigation because the information can be used
to identify the user(s) of the SUBJECT ACCOUNT.

33. I request that the PROVIDER provide the entire
contents for the SUBJECT ACCOUNT since inception until the time
the requested warrant is served on them, and that the items to
be seized set forth in detail in Attachment B permit law
enforcement to seize such items without limit as to time in
order to assist in identifying the individual(s) participating

17

in the possession, receipt, distribution, and production of
child pornography.  I further request this because the SUBJECT
ACCOUNT may have historical information about the identities of
the user(s) of one or other accounts involved in this crime.

34. The requested search warrant specifically requests
any and all logs of user activity, including web requests or
HTTP request, web server logs, web access logs, login tracker
logs, account management logs, web proxy logs, any search
history or web history, and any other information concerning
web sites navigated to or analytics related to the SUBJECT
ACCOUNT.  Those records can show other actions taken in
furtherance of criminal activity.

35. In order to identify other accounts used or
maintained by the user of the SUBJECT ACCOUNT, the warrant also
calls for the PROVIDER to disclose any cookies associated with
the SUBJECT ACCOUNT.  The warrant also calls for the PROVIDER
to identify any other accounts accessed by any computer or web
browser using the same cookies (but not to provide the contents
of communications in those accounts).

36. I know from my training and experience that the
complete contents of an account may be important to
establishing the actual user who has dominion and control of
that account at a given time.   Accounts may be registered in
false names or screen names from anywhere in the world with
little to no verification by the provider.  They may also be
used by multiple people.  Given the ease with which e-mail
accounts may be created under aliases, and the rarity with

18

which law enforcement has eyewitness testimony about an individual's use of an account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.

37. Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search would, in some instances, prevent the government from identifying the true user of the account and, in other instances, may not provide a defendant with sufficient information to identify other users of the account. Therefore, the complete contents of a given account, including the e-mail addresses and messages sent to that account, often provide important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with the SUBJECT ACCOUNT without a date restriction for review by the search team.

38. Relatedly, the government must be allowed to determine whether other individuals had access to a SUBJECT ACCOUNT. If the government were constrained to review only a small subsection of an account, that small subsection might give the misleading impression that only a single user had access to the account.

39. I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversation s to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and parenthesis :) to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities,   so actual review of the contents of the SUBJECT ACCOUNT by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

40. As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

41. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken

20

from the SUBJECT ACCOUNT as its business record without the
original production to examine.  Even if the PROVIDER kept an
original copy at the time of production    (against which it
could compare against the results of the search at the time of
trial), the government cannot compel the PROVIDER to keep a
copy for the entire pendency of the investigation and/or case.

If the original production is destroyed, it may be
impossible for the PROVIDER to examine a particular document
found by the search team and confirm that it was a business
record of the PROVIDER's taken from the SUBJECT ACCOUNT.

42. I also know from my training and experience that
accounts may be purged as part of the ordinary course of
business by the PROVIDER.  For example, if an account is not
accessed within a specified time period, its contents- - may be
deleted.  As a consequence, there is a risk that the only
record of the contents of an account might be the production
that a provider makes to the government, for example, if a
defendant is incarcerated and does not (perhaps cannot)access
his or her account.    Preserving evidence, therefore, would
ensure that the government can satisfy its Brady obligations
and give the defendant access to evidence that might be used in
his or her defense.

## VI. REQUEST FOR NON-DISCLOSURE

43. Pursuant to 18 U.S.C. § 2705(b), I request that the
Court enter an order commanding the PROVIDER not to notify any
person, including the subscriber(s) of the SUBJECT ACCOUNT, of
the existence of the warrant because there is reason to believe

that such notification will result in: (1) flight from
prosecution; (2) destruction of or tampering with evidence;
(3) intimidation of potential witnesses; or (4) otherwise
seriously jeopardizing the investigation.  The current
investigation set forth above is not public, and I know, based
on my training and experience, if the PROVIDER or other person
notifies the target(s) of the investigation that a warrant has
been issued for a SUBJECT ACCOUNT, the target(s) might take
steps to seriously jeopardize the investigation.

## VII. CONCLUSION

44. Based on the foregoing, I request that the Court
issue the requested warrant.


_____
SEAN P. LUNNEY, Special
Agent Homeland Security
Investigations

Subscribed to and sworn before me
this _____ day of December, 2017.


_____
HONORABLE CHARLES EICK
UNITED STATES MAGISTRATE JUDGE

22